BENJAMIN B. WAGNER
United States Attorney
NIRAV K. DESAI
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:13-CR-0284 MCE |
|---|---|
| Plaintiff, | PLAINTIFF'S SENTENCING MEMORANDUM |
| v. | DATE: October 30, 2014 |
| GUMARO LIZARRAGA-CORRALES, | TIME: 9:00 a.m. |
|  aka Gumaro Corrales Lizarraga, | COURT: Hon. Morrison C. England, Jr. |
|  aka Lucio Palacios Valenzuela, |  |
|  aka Maro Isarraga-Corrales, |  |
| Defendant. |  |

Plaintiff United States of America ("government"), by and through its undersigned counsel, hereby requests that the Court sentence defendant Gumaro Lizarraga-Corrales ("Lizarraga") to 57 months of imprisonment, at the low-end of the uncontested advisory sentencing range. Given the high likelihood of Lizarraga's illegal return to the United States and the attendant risk he poses to public safety, the government opposes any downward departure on the basis of "cultural assimilation," or a downward variance premised on the facts relating to cultural assimilation. The government also requests that, in accordance with the parties' plea agreement, the Court impose this sentence consecutive to the state prison sentence Lizarraga is presently serving. See PSR ¶ 24; Plea Agreement at 3.

Lizarraga was previously deported in September 2009, after committing two drug offenses including a drug trafficking offense that resulted in a two-year prison sentence. PSR ¶¶ 22-23. Shortly after his deportation, Lizarraga illegally re-entered the United States and committed more crime.

Specifically, immigration officials found Lizarraga in the United States in December 2010, after Lizarraga was convicted of voluntary manslaughter and sentenced to 14 years in prison. PSR ¶¶ 5, 24. Despite two prior drug convictions and one deportation, Lizarraga had returned to the United States and participated in an attempted home invasion robbery designed to steal drugs and money from the victim. PSR ¶ 24. One person was killed in the botched robbery. PSR ¶ 24. Lizarraga also made admissions that he had been involved in two other home invasion robberies earlier that year. PSR ¶ 24.

The government anticipates that Lizarraga will request a downward departure based on cultural assimilation as provided in Application Note 8 to U.S.S.G. § 2L1.2, and opposes any such departure for two reasons. First, Lizarraga did not file formal objections to the final PSR. Although he submitted informal objections to the draft PSR in regards to a cultural assimilation departure, he did not file formal objections.

Second, as the Probation Officer correctly concluded (see Dkt. No. 32-1), a downward departure on the basis of cultural assimilation is not warranted on the merits because such a departure would likely increase the risk to the public from Lizarraga's further crimes. The departure is provided for in Application Note 8 to § 2L1.2:

> There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation. Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, *and* (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

U.S.S.G. § 2L1.2 cmt. n.8 (emphasis added).[1]

---

[1] Application Note 8 to U.S.S.G. § 2L1.2 further provides:

> In determining whether such a departure is appropriate, the court should consider, among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

Lizarraga fails to meet at least one of the prerequisites for a downward departure: Lizarraga is very likely to increase the risk to the public given the high probability that he will illegally return to the United States and commit more violent acts. Prior to his first formal deportation in 2009, Lizarraga had already been convicted of two drug offenses including a drug trafficking offense. By the time immigration officials found Lizarraga in December 2010—just over one year after his deportation—Lizarraga had already been involved in three home invasion robberies, one of which resulted in a shooting death and his conviction for voluntary manslaughter. On this record, Lizarraga, who the PSR characterizes as having a "propensity for violence" (PSR at p. 12), poses a severe risk to the public.

To the extent Lizarraga makes such an argument, the government also opposes any requested downward variance premised on the facts that underlie the anticipated cultural assimilation argument. For the reasons stated above, the § 3553(a) factors militate against a downward variance. That assessment does not change if the Court views Lizarraga's history and characteristics through the "cultural assimilation" lens. Lizarraga sustained three convictions—including for drug trafficking and voluntary manslaughter—all by the age of 27. He further admitted to being involved in two uncharged home invasion robberies in 2010. See PSR ¶ 24. This history and these characteristics do not warrant a downward variance. Moreover, Lizarraga is a defendant who requires the strongest deterrence both from illegally re-entering the United States and committing violent crimes. Lizarraga has no respect for the criminal laws of California and the United States, and this country's immigration laws. Finally, and critically, the public must be protected from an individual who has either admitted to, or been convicted of, very serious offenses including home invasion robberies.

The government respectfully requests that the Court impose a sentence of 57 months in prison, consecutive to Lizarraga's sentence for voluntary manslaughter.

Dated: October 22, 2014                     BENJAMIN B. WAGNER
                                            United States Attorney


                                      By:   /s/ NIRAV K. DESAI
                                            NIRAV K. DESAI
                                            Assistant United States Attorney